UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| CASCADE SETTLEMENT SERVICES LLC, <br><br> Plaintiff, <br><br> v. <br><br> OPTIUM CAPITAL LLC, et al., <br><br> Defendants. | Case No. 24-cv-05372-LB <br><br> **AMENDED ORDER REMANDING CASE** <br><br> Re: ECF Nos. 8, 17 |

### INTRODUCTION

The parties — plaintiff Cascade Settlement Services LLC and defendant Optium Capital LLC — are competitors: both buy class-action claims from class members.[1] This lawsuit is about whether Optium, which was founded by Cascade's former CEO, breached the parties' 2015 prelitigation settlement agreement addressing Cascade's concern that former Cascade (now Optium) employees misappropriated Cascade's confidential information.[2] Cascade filed the lawsuit in state court. Optium removed it to federal court, asserting federal-question jurisdiction on the ground that Cascade can prevail on its claims only if it is entitled to recover settlement

---

[1] First Am. Compl. (FAC) – ECF No. 16 at 5 (¶ 19). Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents. This order corrects the text accompanying footnotes 9 and 10 to clarify that Cascade's former Business Development Officer, not its former CEO, took proprietary information home on an USB.

[2] *Id.* at 6–9 (¶¶ 21–32).

AM. ORDER – No. 24-cv-05372-LB

funds in an ongoing federal antitrust class action in the Eastern District of New York.[3] Cascade moved to remand the case to state court for lack of federal jurisdiction, and Optium moved to transfer the case to the Eastern District of New York.[4] Because this case does not fall into the narrow category of state-law claims that involve federal law as a necessary element of the claim for relief, there is no federal-question jurisdiction, and the court remands the case. The court denies the motion to transfer as moot and denies Cascade's motion for sanctions because removal was not objectively unreasonable.

## STATEMENT

Cascade provides services to class members entitled to recover funds from class-action lawsuits by acting as their agent to file claims in exchange for a contingent fee upon recovery. It also buys claims in pending class actions that may or may not settle.[5] One action is the pending antitrust class action in the Eastern District of New York, *In re: Payment Card Interchange Fee & Merch.-Discount Antitrust Litig.*, No. 1:05-md-01720 (the Visa Antitrust Litigation).[6] In connection with its work, including in the Visa Antitrust Litigation, Cascade has gathered data, hired economists to model class-action claims, and developed a portfolio of proprietary information, including identities of clients and details about recoveries.[7]

Cascade's former CEO left Cascade in 2014 to form Optium.[8] Cascade's CFO and its Business Development Officer followed a few months later. "Eventually," Cascade's inhouse counsel, who had been with Cascade many years including in 2015, joined Optium too.[9] All had access to Cascade's proprietary information, including client lists and details about client contracts. The

---

[3] Notice of Removal – ECF No. 1 at 5–9; *id.* at 2–5 (asserting diversity jurisdiction too); Opp'n to Mot. to Remand – ECF No. 19 (asserting only federal-question jurisdiction).

[4] Mot. to Remand – ECF No. 8; Mot. to Transfer – ECF No. 17.

[5] FAC – ECF No. 16 at 4 (¶ 14).

[6] *Id.* (¶ 15).

[7] *Id.* at 4–5 (¶¶ 16–18).

[8] *Id.* at 5 (¶ 19).

[9] *Id.* at 5–6 (¶ 20).

Business Development Officer regularly took that proprietary information home on a USB when he was at Cascade. When he joined Optium, he said that he had destroyed the USB.[10]

After extensive pre-litigation settlement negotiations, on May 28, 2015, the parties signed a written settlement agreement that "required that Optium would assume Cascade Agency Contracts whenever Optium purchased claims from a then-existing Cascade Client. . . . [F]or each Cascade Client, Optium would allow Cascade to control the claims filing process and receive the settlement proceeds from the Claims Administrator."[11] More specifically, in a section titled "Cooperation and Non-interference," Optium agreed not to use or disclose Cascade's confidential information in its future business activities. It agreed that it would not knowingly solicit, interfere with, or cause a Cascade client to cancel or diminish the value of the client's contract with Cascade. To comply with that term, it agreed that "in any substantive contract negotiations with a potential client," it would ask whether that client had an existing contract with another company. If the client did, then Optium would ask whether the company was Cascade. Optium agreed that if it purchased a Visa claim from a Cascade client, it would purchase the entire claim and assume the contract on the existing terms. Under that contract, Cascade would notify the Visa claims administrator of its servicing role, perform the filing services, receive the net recovery, deduct its servicing fee, and provide the net settlement to Optium.[12] The settlement agreement has a California choice-of-law clause and a forum-selection clause "designat[ing] the state and federal courts of California as the courts of competent jurisdiction and venues for any actions or proceedings related to the Agreement."[13]

The parties provide more information about the Visa Antitrust Litigation. The lawsuit was filed in 2005. It settled in 2012, but the Second Circuit vacated the settlement on appeal. The case settled again in 2018 for $5.5 billion, the final approval was in 2023, and the claims-submission

---

[10] *Id.* at 6 (¶¶ 21–22).

[11] *Id.* at 7 (¶ 26).

[12] *Id.* at 7–8 (¶ 28) (excerpting provision), 8–9 (¶¶ 29–32).

[13] Release Agreement, Ex. A to Taylor Decl. – ECF No. 23-2 at 5 (§ 10). The court considers the full agreement under the incorporation-by-reference doctrine. *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

process began in December 2023 and will continue into 2025.[14] A special master has been appointed to "resolve any disputes or matters arising out of or relating to the Plan of Administration and Distribution."[15] The special master has "discretion to determine the appropriate procedures for resolution of all matters within his or her appointment and shall have the authority to take all appropriate measures to perform the assigned duties."[16] "Matters arising out of or relating to the Settlement Agreement's Plan of Administration and its claim process shall be raised in the first instance with the Class Administrator, except for any specific matter that the Court directly refers to the Special Master." The claims administrator can decide the matter, which is appealable to the special master, or refer it to the special master. After briefing, the special master dockets a report and recommendation, the parties can file their objections, and the district court reviews the determination de novo.[17]

When more than one claimant registers a claim, "the claim goes into 'conflict' status and all parties seeking to control the claim receive notice of that conflict. It was through this process that Cascade learned" in 2024 that it was "in conflict with Optium on a number of claims, and, after some investigation, that Optium had breached the 2015 agreement by claiming to have the authority to file claims of certain Cascade Clients."[18] Cascade identifies its contracts — all entered into before its former employees left to join Optium — with five entities to file claims on their behalf in class-action settlements in return for a contingency fee upon recovery: the Vail Corporation, Peet's Coffee and Tea, Sleepy's LLC, the Sleep Train, Inc., and Redcats USA, Inc. (now FullBeauty Brands, L.P.).[19] In April 2024, the Visa Antitrust Litigation claims administrator notified the parties that claims for these five entities were in conflict, meaning, that Cascade and

---

[14] FAC – ECF No. 16 at 4 (¶ 15).

[15] Order, No. 1:05-md-01720 (MKB) (VMS), Ex. B to Sasse Decl. – ECF No. 17-3 at 3.

[16] *Id.* (¶ 2).

[17] *Id.* at 3–4 (¶¶ 3–4).

[18] FAC – ECF No. 16 at 9–10 (¶ 33).

[19] *Id.* at 10–16 (¶¶ 36–73).

Optium both submitted claims on these entities' behalf.[20] Optium bought the class-action claims from the five entities, who represented to Optium that they had not engaged a third-party service for the claims.[21] Cascade alleges that it is owed money from the five entities' claims.[22]

Cascade contends that Optium breached the settlement agreement in two ways: (1) Optium interfered with Cascade's contracts by encouraging Cascade clients to terminate their agreements with Cascade, in violation of the settlement agreement's non-interference provisions, and (2) Optium misconstrues the settlement agreement, "claiming that it does not have to assume Cascade [] contracts for claims that Optium purchased from existing Cascade clients. Optimum also claims that it (and not Cascade) has the right to control, file, and collect on the claims at issue . . . ."[23]

Since the filing of this lawsuit, Cascade notified the claims administrator in the Visa Antitrust Litigation that it was withdrawing its registration of the disputed claims, thereby relinquishing those claims to Optium.[24] In its amended complaint, it dropped its request to enjoin Optium from asserting control over the disputed claims and seeks only damages.[25]

To counter Cascade's contention that its claims are no longer dependent on the Visa Antitrust Litigation, Optium points to the E.D.N.Y.'s October 2014 injunction.[26] The injunction singled out Spectrum (merged with Cascade) and others for making materially false statements to merchant class members and required corrective action in the form of notices.[27]

---

[20] Letter, Ex. A to Sasse Decl. – ECF No. 24-2 at 2–5 (referencing claims); FAC – ECF No. 16 at 11 (¶¶ 40, 42), 13 (¶¶ 51, 53), 14 (¶ 61), 15 (¶ 69).

[21] Sasse Decl. – ECF No. 24-1 at 2 (¶ 4); FAC – ECF No. 16 at 11 (¶ 41) (after Cascade contacted Vail with a copy of the 2012 contract, Vail denied knowledge and to the extent it existed, terminated it), 13 (¶ 52) (Peets similarly terminated contract), 14 (¶ 62) (same for Sleep's and the Sleep Train agreements).

[22] FAC – ECF No. 16 at 11 (¶¶ 40, 42), 13 (¶¶ 51, 53), 14 (¶ 61), 15 (¶ 69); Reply in Support of Mot. to Remand – ECF No. 21 at 5 (characterizing dispute as Optium's failure to pay Cascade for claims it purchased from Cascade's clients) (citing FAC – ECF No. 16 at 4 (¶ 13), 10 (¶ 34)).

[23] FAC – ECF No. 16 at 10 (¶ 34).

[24] *Id.* at 12 (¶ 48), 14 (¶ 56), 15 (¶ 65), 16 (¶ 72); Withdrawal, Ex. B to Taylor Decl. – ECF No. 23-3 at 3–5.

[25] FAC – ECF No. 16 at 18–19; Blackline Compare – ECF No. 16-1 at 18–21 (shows deletions).

[26] Reply in Supp. of Mot. to Transfer – ECF No. 24 at 3–4.

[27] Sasse Decl. – ECF No. 24-1 at 3 (¶¶ 9–11) (citing Order, Ex. C to *id.* – ECF No. 24-4 at 16, 33–34, 53) (pp. 15, 32–33, 52).

The procedural timeline of the case is as follows. Cascade sued Optium in California state court on August 13, 2024.[28] Optium removed the case to the Northern District of California on August 19, 2024.[29] Cascade moved to remand the case to state court for lack of federal jurisdiction, and Optium moved to transfer the case to the E.D.N.Y. or, alternatively, to stay the case pending the E.D.N.Y.'s consideration of Optium's motion to intervene in the Visa Antitrust Litigation and for a preliminary injunction preventing Cascade from litigating its claims in a forum other than E.D.N.Y.[30] Cascade is not a party to the Visa Antitrust Litigation. The district court there stayed its decision pending this court's determination about removal jurisdiction.[31]

The claims in the operative complaint are for breach of contract, anticipatory breach of contract, declaratory relief, and, in the alternative, intentional interference with prospective economic relations.[32] The court held a hearing on October 10, 2024. All parties consented to magistrate-judge jurisdiction under 28 U.S.C. § 636(c)(1).[33]

## ANALYSIS

The main issue is whether there is federal-question jurisdiction that supports removal to federal court.[34] There is not.

28 U.S.C. § 1441(a) provides that a defendant may remove a case to federal court if the plaintiff could have filed the case initially in federal court based on federal-question or diversity jurisdiction. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). District courts are courts of limited

---

[28] Compl. – ECF No. 1-2 at 15.

[29] Notice of Removal – ECF No. 1.

[30] Mot. to Remand – ECF No. 8; Mot. to Transfer – ECF No. 17; Filings, Exs. C–D to Sasse Decl. – ECF Nos. 24-4–24-5.

[31] Statement of Recent Decision – ECF No. 27.

[32] FAC – ECF No. 16 at 16–18 (¶¶ 74–92), 18–19 (Prayer for Relief).

[33] Consents – ECF Nos. 11, 15.

[34] Procedurally, the plaintiff filed an amended complaint while the parties were briefing the motions. Optium asserted that this mooted the motion to remand. Opp'n to Mot. to Remand – ECF No. 19 at 5 n.2. At the hearing, the court discussed the issue with the parties, who agreed that given all the briefing — including the motion to transfer — they had addressed the issues adequately (even though the timing of the FAC was unfortunate).

jurisdiction and, therefore, generally construe the removal statute strictly and reject federal jurisdiction if there is any doubt as to the right of removal. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). On removal, the removing party has the burden of establishing the court's jurisdiction. *Ethridge v. Harbor House Rest.*, 861 F.2d 1389, 1393 (9th Cir. 1988). Optium asserts only federal-question jurisdiction.

Under the "well-pleaded complaint rule," "a civil action arises under federal law for purposes of [28 U.S.C] § 1331 when a federal question appears on the face of the complaint." *City of Oakland v. BP PLC*, 969 F.3d 895, 903 (9th Cir. 2020) (citing *Caterpillar*, 482 U.S. at 392). Because federal jurisdiction "depends solely on the plaintiff's claims for relief and not anticipated defenses to the claims, a case may *not* be removed to federal court based on a federal defense, including a defense of preemption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue." *Id.* at 903–04 (cleaned up and quoting *Caterpillar*, 482 U.S. at 393).

"There are a few exceptions to the well-pleaded-complaint rule, however." *Id.* at 904. There is a "special and small category of state-law claims that arise under federal law for purposes of [28 U.S.C.] 1331 because federal law is a necessary element of the claim for relief." *Id.* (cleaned up and quoting *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 699 (2006)). "Only a few cases have fallen into this 'slim category.'" *Id.* (quoting *Empire Healthchoice*, 547 U.S. at 701) ((1) quiet-title actions that involved disputes of federal law; (2) a shareholder suit seeking to enjoin a Missouri corporation's investment in federal bonds on the ground that the federal act authorizing the bonds was unconstitutional; and (3) a quiet-title action claiming unlawful seizure by the IRS because the notice of seizure did not comply with the Internal Revenue Code).

Optium asserts federal-question jurisdiction under this narrow exception on the ground that — despite the fact that this is a contract dispute governed by state law involving competing interpretations of a settlement agreement — the case's interplay with the Visa Antitrust Litigation implicates significant federal issues such that the E.D.N.Y. necessarily must decide whether

Cascade has viable claims.[35] This, Optium contends, establishes federal-question jurisdiction because "certain state law claims may 'implicate significant federal issues,' such that federal 'arising under' jurisdiction applies."[36]

The test for this narrow exception (as the parties agree) is that there is federal jurisdiction over a state-law claim "if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress."[37] *Gunn v. Minton*, 568 U.S. 251, 258 (2013); *City of Oakland*, 969 F.3d at 904–05 (all four requirements must be met).

"The Court has often focused on the third requirement, the question whether a case turns on substantial questions of federal law." *City of Oakland*, 969 F.3d at 905 (cleaned up and quoting *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005)). "This inquiry focuses on the importance of a federal issue 'to the federal system as a whole.'" *Id.* (quoting *Gunn*, 568 U.S. at 260). "An issue has such importance when it raises substantial questions as to the interpretation or validity of a federal statute" or "challenges the functioning of a federal agency or program." *Id.* (cleaned up and collecting cases, including a challenge to the IRS's ability to satisfy tax delinquencies by seizing property). "By contrast, a federal issue is not substantial if it is fact-bound and situation-specific or raises only a hypothetical question unlikely to affect interpretations of federal law in the future." *Id.* (cleaned up). "A federal issue is not substantial merely because of its novelty or because it will further a uniform interpretation of a federal statute." *Id.* (cleaned up).

This is a fact-bound and situation-specific private dispute that presents no pure issue of law. Citing *RP Healthcare, Inc. v. Pfizer, Inc.*, Optium nonetheless contends that the federal system has an interest in avoiding unnecessary litigation and inconsistent results.[38] No. C 12-01059 JSW, 2012 WL 12906515, at *2 (N.D. Cal. June 6, 2012) (staying case pending transfer in an MDL and

---

[35] *Id.* at 6–7 (quoting *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005)).

[36] *Id.* at 6.

[37] *Id.*; Reply in Support of Mot. to Remand – ECF No. 21 at 8.

[38] Opp'n to Mot. to Remand – ECF No. 19 at 9.

denying remand without prejudice on the ground that "[h]aving individual courts decide the same or similar issues would be an inefficient use of judicial resources which would increase the risk of inconsistent results"). But that MDL transfer case asserted Cartwright Act antitrust claims that might require resolution of federal patent law. *Id.* Cascade's claims here — involving contracts and revenues for ownership of class-action claims — are not equivalent issues.

Cascade asked for sanctions based on Optium's initial assertion of diversity jurisdiction.[39] The main issue was federal-question jurisdiction. Under the circumstances, the court does not impose sanctions because removal was not "objectively unreasonable." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005).

The court denies the motion to transfer as moot.

# CONCLUSION

The court remands the case to the Marin County Superior Court, denies Cascade's motion for sanctions, and denies Optium's motion to transfer the case to the E.D.N.Y. as moot. This resolves ECF Nos. 8 and 17.

**IT IS SO ORDERED.**

Dated: October 31, 2024

LAUREL BEELER
United States Magistrate Judge

---

[39] Mot. to Remand – ECF No. 8 at 6–7.